**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | CV 11-1079-PHX-JAT |
| | Bk No. 2:09-bk-19166-RLH |
| Red Mountain Machinery Co., | ADV. No. 2:09-ap-00941-CGC |
| Debtor, | |
| | **ORDER** |
| Comerica Bank, | |
| Appellant. | |
| vs. | |
| Red Mountain Machinery Co., et al., | |
| Appellees. | |

Pending before the Court is Appellees' motion to dismiss this appeal for mootness (Doc. 41). Also pending is Appellees' motion to dismiss the appeal of the bankruptcy court's ruling on the § 1111(b) election as untimely (Doc. 23). Finally, both parties have fully briefed the merits of the appeal (Docs. 21, 25, and 40).

**I.     Motion to Dismiss for Mootness**

**A.  Law Governing Equitable Mootness**

Appellees argue this appeal should be dismissed because it is moot based on equitable considerations.

On the issue of equitable mootness, the Ninth Circuit Court of Appeals has instructed,

> An appeal from a bankruptcy court's order is equitably moot "when, in the absence of a stay, events occur that make it impossible for the appellate court to fashion effective relief." *In re Spirtos*, 992 F.2d 1004, 1006 (9th Cir. 1993)

> (citing *In re Roberts Farms, Inc.*, 652 F.2d 793 (9th Cir. 1981)). In *Roberts Farms*, we dismissed an appeal because the appellant did not obtain a stay of the bankruptcy court's confirmation of a Plan of Arrangement and, as a result, a significant portion of the plan had been carried out before the appeal could be heard. We reasoned that overruling the bankruptcy court's confirmation of the plan would "create an unmanageable, uncontrollable situation for the Bankruptcy Court" to undo the portion of the plan that had been carried out and thus the appeal was equitably moot. *See Roberts Farms*, 652 F.2d at 797.
>
> We have also held, however, that an appellant's failure to obtain a stay before appealing a bankruptcy court's award of fees does not necessarily render the appeal equitably moot. *See In re Cascade Roads, Inc.*, 34 F.3d 756 (9th Cir. 1994); *In re Spirtos*, 992 F.2d 1004 (9th Cir. 1993); *In re International Envtl. Dynamics, Inc.*, 718 F.2d 322 (9th Cir. 1983). In *International Environmental Dynamics*, even though the appellant failed to obtain a stay before appealing the bankruptcy court's order granting the debtor's counsel attorney fees, we held that the appeal was not equitably moot because the counsel was a party before the bankruptcy court and knew the appellant contested the fee award. *See International Envtl. Dynamics*, 718 F.2d at 326; *see also Cascade Roads*, 34 F.3d at 761 (holding that an appeal was not equitably moot because the person who was issued the money was a party and was aware when the payment was made that the award would be appealed); *Spirtos*, 992 F.2d at 1006-07 (same).

*In re S.S. Retail Stores, Corp.*, 216 F.3d 882, 884-85 (9th Cir. 2000).

Additionally, the Court of Appeals further explained,

> While the doctrine of equitable mootness focuses on whether it is, for all practical purposes, impossible to award effective relief, other equitable considerations center on whether it would be unfair to grant the relief requested. Therefore, even if an appeal is not equitably moot, a court may still hold that the equities weigh in favor of dismissing the appeal. *See, e.g., In re Federated Dep't Stores, Inc.*, 44. F.3d 1310, 1320 (6th Cir. 1995) (holding that even though the appeal was not moot because effective relief was possible, it was inequitable to require that the debtor's counsel disgorge fees and costs awarded by the bankruptcy court).

*Id.* at 885.

The first concept discussed above is also referred to as real or constitutional (Article III) mootness. *In re National Mass Media Telecommunication Systems Inc.*, 152 F.3d 1178, 1180 (9th Cir. 1998) (constitutional mootness "applies when an event occurs while a case is pending appeal that makes it impossible for the court to grant any effectual relief." (internal quotations omitted)). Quoting *Matter of UNR Indus., Inc.*, 20 F.3d 776, 769 (7th Cir. 1994), the Court stated, "There is a big difference between *inability* to alter the outcome (real mootness) and *unwillingness* to alter the outcome ('equitable mootness')." *Id.* at 1180 n. 3.

In this case, Appellee moved for a stay pending appeal, which this Court denied. Doc.

15. The Debtor moves to dismiss the appeal based on "equitable mootness" but argues largely constitutional mootness, including citing extensively this Court's decision in *Coleman v. ANMP (In re Dexter Distrib. Co.)*, 2010 WL 1052828 (D. Ariz. Mar. 18, 2010), which was based, in relevant part, on constitutional mootness. Thus, the Court will analyze mootness applying both constitutional mootness and equitable mootness.

Appellant raises three claims of error on appeal: 1) the bankruptcy court erred in allowing in part and denying in part Appellant's § 1111(b) election; 2) the bankruptcy court erred in determining the adequacy of the value of the contribution by Owen and Linda Cowing, and 3) whether the bankruptcy court erred in determining the interest rate Appellant would be paid going forward. First, the Court will summarize the arguments as to each claim.

### A. Claims of Error on Appeal

#### 1. 1111(b) Election

With respect to this claim, Appellant argues that this Court can grant relief because the only change would be, "[Appellant's] claim against the Debtor would be entitled to treatment under the Plan as fully secured and the Debtor's payments to [Appellant] would have to be incrementally higher over the Plan's terms." Doc. 45 at 5. Appellees respond and argue that if this Court changed the § 1111(b) election, the lender who provided exit financing and the Cowings (who provided additional equity contribution) would not get the benefit of their bargain and would be entitled to a refund of their money. Doc. 46 at 3. Further, Appellees argue that such a result would necessitate clawing back from creditors all of this money that has already been spent. *Id.* Appellant concedes that giving it relief on this claim would require the Debtor to make higher payments to Appellant over the next 15 years. Doc. 45 at 6. However, Appellant argues that the Appellees fail to identify with specificity "how incrementally higher Plan payments to [Appellant] over 15 years would imperil the Debtor's contracts with customers and vendors, the Debtor's exit financing ..., or any facet of the Debtor's ongoing operations." *Id.* (emphasis omitted).

### 2. Value of Contribution

Again, Appellees argue that because the Plan has been consummated, this Court cannot remand to the bankruptcy court to determine anew whether the Cowings made a substantial enough financial contribution for the interest they received. Specifically, the Cowings contributed $480,000 in new capital in exchange for being permitted to retain all of the equity interest in the Debtor. Doc. 21 at 5. Appellant argues, "How an order of this Court remanding the case back to the bankruptcy court so that the Debtor can meet its evidentiary burden on the new value contribution affects at all the Debtor's post-confirmation business affairs is nearly impossible even to imagine." Doc. 45 at 6. Conversely, Appellee argues,

> ...Owen Cowings and Linda Cowing made a new equity contribution of $480,000.... Lender Arlington RMMC Investments, LLC, provided exit financing, of which $834,591.37 had been funded.... Debtor used these funds to pay creditor claims according to the terms of the Plan.... In all fairness, if the Court were to vacate and or materially change the terms of the Plan (as requested by [Appellant]), it must provide Arlington, Owen Cowing and Linda Cowing [the] opportunity to rescind their loan and investment.... At a minimum, the Court would have to order every claimant paid so far under the Confirmed Plan to fully disgorge its payment. In effect, this would require unwinding the entire plan — a plan that has been substantially consummated.

Doc. 46 at 3-4.

### 3. Interest Rate

The parties make virtually identical arguments on the interest rate issue as the § 1111(b) election issue.

### C. Analysis

In general terms, Appellees argue that this Court should dismiss this appeal as moot because there has been: "1) substantial infusion of new equity, 2) substantial payment of taxes, 3) substantial payment to creditors, and 4) substantial implementation of new financing." Doc. 41 at 10 (citing *Coleman*, 2010 WL 1052828 at *3.) Appellees go on to argue that an appeal is moot when the remedies sought would affect third parties who are not

- 4 -

participants in the appeal. *Id.* (citing *Coleman*, 2010 WL 1052828 at *4).[1] Finally, Appellee argues that because the plan has been substantially consummated, this Court cannot fashion relief. Doc. 41 at 7 (quoting *Clarke v. Duck (In re Clarke)*, 98 B.R. 979, 980 (9th Cir. BAP 1989) ("It is now well recognized that when a stay of an order confirming a reorganization plan has not been obtained and the plan has been consummated, appeals seeking to attack the confirmed plan may be precluded.")). Further, quoting the Bankruptcy Court in the Southern District of New York, Appellees argue that, "substantial consummation requires only that there was a commencement of distribution under the plan."). Doc. 41 at 8 (quoting *In re Fansal Shoe Corp.*, 119 B.R. 28, 30 (Bankr. S.D.N.Y. 1990)). Appellant responds and argues that it is Appellees' burden to establish that there is no effective remedy that the Court can provide and that Appellees have failed to meet this burden. Doc. 45 at 4 (citing five cases including *In re Focus Media, Inc.*, 378 F.3d 916, 923 (9th Cir. 2004).

### 1.   Section 1111(b) Election and Interest Rate

As discussed above, if this Court granted relief on either of these claims, the Debtor would be required to pay Appellant more money over the next 15 years. Because the Court can imagine that a complete restructuring of the payment plan would affect a variety of people who are not parties to the appeal, the Court strongly suspects that the relief sought is moot. Further, neither party disputes that the plan has been substantially consummated; however, Appellant argues that substantial consummation alone does not render the appeal to be moot. *See* Doc. 45 at 7 (quoting *First Fed'l Bank of California v. Weinstein (In re Weinstein)*, 227 B.R. 284, 289 (9th Cir. BAP 1998) ("the fact that a plan is substantially consummated and that the appellant failed to obtain a stay pending appeal does not, by itself, render an appeal moot. The appellate court should still consider whether it can grant

---

[1] And quoting *Trone v. Roberts Farm, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 797 (9th Cir. 1981) ("Certainly, reversal of the order confirming the plan of arrangement, which would knock the props out from under the authorization for every transaction that has taken place, would do nothing other than create an unmanageable, uncontrollable situation for the Bankruptcy Court.").

1  effective relief.")).

2  The Court agrees with Appellant, that Appellees have failed to point out with any
3  particulars or specifics why or how the Debtor paying more to a particular creditor would
4  necessarily result in unwinding the entire plan. Certainly the Court can hypothesize that
5  changing the Debtor's repayment obligations could potentially have a domino effect on all
6  other aspects of the Plan. If such were true, then the Court would find the appeal of these
7  claims to be moot. However, on this record, and not knowing for certain that the Debtor
8  making a higher payment would impact the Debtor's ability to go forward, the Court does
9  not find the appeal of these claims to be constitutionally/equitably moot.

### 2. Value of New Equity Contribution

11 As to this claim, Appellees have provided significant specifics regarding how the Plan
12 has been consummated and how a change in the value of the new equity contribution would
13 require an unwinding of the Plan. Specifically, the Cowings provided $480,000 in new
14 capital in exchange for the equity in the Debtor. If the Court changed either the amount of
15 the value the Cowings would receive or the amount of money the Cowings would have to
16 pay (assuming the Cowings could pay more), the Cowings may not desire or be able to go
17 forward with the Plan. Further, without the Cowings contribution, the Lender may not
18 choose to fund the exit financing (or financing might be moot because without the Cowings'
19 contribution the Debtor may not be able to go forward).

20 Thus, considering that both the Lender and the Cowings have already paid the money,
21 and that the money has been spent, the Court finds that the substantial consummation of the
22 Plan in this regard prevents the Court from fashioning any relief. There are a variety of
23 creditors (including taxes) that have been paid, from whom disgorgement may not be
24 possible. Further, even assuming disgorgement is available from all creditors, this would
25 create the unworkable and unmanageable situation that the Court of Appeals has cautioned
26 against. Accordingly, the Court finds that the Appellant's appeal with respect to the value
27 of the new equity contribution is constitutionally/equitably moot and the Court will not
28 consider the merits of that claim of error.

- 6 -

## II.     Motion to Dismiss Appeal on Section 1111(b) issue as untimely

The parties agree that the Order of the Bankruptcy Court from which this claim of error arises was entered on January 6, 2011. *See* Doc. 23 at 2. The parties agree that Appellant did not file a notice of appeal with respect to that specific order. *See id.* The parties further agree that the Bankruptcy Court's order confirming the Plan was entered on May 24, 2011. *See id.* Finally, the parties agree that on June 7, 2011, Appellant timely appealed the May 24, 2011, Order. *See id.* However, the parties dispute whether the January 6, 2011 order was a final order from which the June 7, 2011 appeal would be untimely.

The parties also agree as to the law governing appeals. Rule 8002(a) required that a notice of appeal be filed within 10 days[2] of the date of the entry of the judgment, order, or decree appealed from. Doc. 23 at 3. The requirement of filing a timely notice of appeal is jurisdictional. *Id*. (citing Rule 8001(a)). Additionally, appeals under 28 U.S.C. § 158(a), must be file within the 10 day time frame. As Appellee quotes,

Section 158(a)(1) states:

(a) the district courts of the United States shall have jurisdiction to hear appeals –

    (1) from final judgments, order, and decrees;

    (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

    (3) with leave of court, from other interlocutory orders and decrees.

Doc. 23 at 4.

Appellee then further states,

> A bankruptcy order is final and thus appealable where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed. *In re Lewis*, 113 F.3d 1040, 1043 (9th Cir. 1997) (quotation marks omitted). To be appealable pursuant to § 158(a)(1), therefore, an order must be final in substance and it must be final in form.

Doc. 23 at 4. Again, the parties agree that this law governs whether Appellant was required

---

[2] This deadline is currently 14 days.

- 7 -

to immediately appeal the January 6, 2011 Order. Doc. 26 at 1. Where the dispute lies is whether under this controlling law Appellant was required to appeal within 10 days of January 6, 2011.

Appellees argue that this Court should, by analogy, base its decision an the appealability of rulings under 11. U.S.C. § 506(a). Doc. 23 at 5. "Section 506(a) 'operates to bifurcate [an under]secured creditor's allowed claim into secured and unsecured interests based upon the bankruptcy court's valuation of the secured property." *Id.* (quoting *In re 1441 Veteran Street Co.*, 144 F.3d 1288, 1291 (9th Cir. 1998)). In the Section 506(a) context, factual determinations of value are not immediately appealable. *Id.* (quoting *In re Rodriguez*, 272 B.R. 54, 57 (D. Conn. 2002)). However, determinations of a method or formula for valuation can be final prior to the plan confirmation because no future order would affect that calculation (whereas the factual value might change). *Id.* In this case, Appellees argue that the formula the Bankruptcy Court applied to the § 1111(b) election closely resembles the § 506(a) election, and therefore, should be governed by the same finality/appealability standard.

Appellant argues that an analysis of the § 506(a) election is inapposite in this case because typically the § 1111(b) election follows the § 506(a) election, but in this case the Debtor proceeded to objecting to the § 1111(b) election first. Doc. 26 at 9. Further, Appellant argues that the method of the Debtor's objection is significant, because the objection was in a disclosure statement. *Id.* at 9-10. Appellant argues that it is clear under Ninth Circuit law that the orders of the Bankruptcy Court approving disclosure statements are interlocutory and not appealable until the plan is confirmed. *Id.* at 9 (citing *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1217 (9th Cir. 1994)). Finally, Appellant argues that this Court should apply the pragmatic approach to determining the finality of the Bankruptcy Court's order, and find the January 6, 2011 non-final. Doc. 26 at 6.

The Court of Appeals has explained,

> We have adopted a "pragmatic approach" to finality in bankruptcy because "certain proceedings in a bankruptcy case are so distinctive and conclusive either to the rights of the individual parties or the ultimate outcome

> of the case that final decisions as to them should be appealable as of right." [citation omitted] Our approach "emphasizes the need for immediate review, rather than whether the order is technically interlocutory." [citation omitted]
>
> Under our pragmatic approach, a bankruptcy court order is considered to be final and thus appealable "where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." [citations omitted] "Although this finality rule is given additional flexibility in the bankruptcy proceedings context, traditional finality concerns nonetheless dictate that 'we avoid having a case make two complete trips through the appellate process.'" [citations omitted]

*In Re Bonham*, 229 F.3d 750, 761 (9th Cir. 2000).

Applying the pragmatic approach, this Court finds that the January 6, 2011 Order was final. Specifically, it resolved the formula that Bankruptcy Court would use for purposes of the § 1111(b) election. That was a final determination on how the election would be calculated. Additionally, Appellant's substantive rights were seriously effected and the January 6, 2011 Order resolved how those rights would be allocated. All that remained was to factually determine the dollar value of the two classes of claims, to which the parties ultimately stipulated. Accordingly, Appellant was required to appeal the January 6, 2011 Order within the time limit of Rule 8002(a). Appellant did not appeal within that time limit; thus, the motion to dismiss for lack of jurisdiction will be granted.

### III. Merits of the Appeal

Following the Court's above rulings on the motions to dismiss, the only remaining issue for the Court to reach on the merits of the appeal is the interest rate applied to the remaining loan between the debtor and the Appellant.

#### A. Standard of Review

Citing nothing, Appellant states, "the appropriate standard for determining the interest rate to be applied to [Appellant's] secured claim [is] a legal issue that this Court reviews de novo." Doc. 21 at 2. Citing two Ninth Circuit Court of Appeals cases, Appellees state that this Court should review the interest rate issue as a question of fact, and give substantial deference to the Bankruptcy Court's determination of the appropriate interest rate. Doc. 25 at 13. Appellant did not discuss the interest rate issue in its reply brief. At oral argument, Appellee conceded that deciding which method a court should use for calculating interest is

- 9 -

a question of law reviewed de novo.

In *In re Fowler*, 903 F.2d 694, 696 (9th Cir. 1990), the Court of Appeals stated, "A bankruptcy court should be accorded substantial deference in making cramdown interest rate determinations." Thus, the Court will consider the methodology used for determining interest de novo, but will give substantial deference to the factual calculation of the interest rate.

**B.     Analysis**

Both sides agree that the Bankruptcy Court's determination of the cramdown interest rate must be fair and equitable. Doc. 25 at 13; Doc. 21 at 13. In *Fowler*, the Court of Appeals adopted the "market" approach to determining the cramdown interest rate. 903 F.2d at 697. The bankruptcy court can determine the market rate of interest using one of two approaches: 1) determining the market interest rate for similar loans in the region; or 2) using a formula. *Id.*

The Court of Appeals further elaborated on the two approaches as follows:

> Under [the first] approach, the court sets the cramdown rate by taking testimony on current market rates regarding loans for the length of time involved secured by the type of property involved. [citation omitted]
> ... Under [the second] approach, the court starts with a base rate, either the prime rate or the rate on the treasure obligations, and adds a factor based on the risk of default and the nature of the security (the "risk factor"). [citation omitted] We approved the use of the formula approach in *Camino Real*, 818 F.2d [1503] at 1508 [9th Cir. 1987].

*Fowler*, 903 F.2d. at 697.

In this case, it appears undisputed that the Bankruptcy Court used the second, formula approach. Appellant argues that the Supreme Court case that approved the use of a formula was a Chapter 13 case; but the formula approach is not appropriate in a Chapter 11 case, such as this one. Doc. 21 at 14-15. *Fowler*, which clearly approved of the use of a the formula approach, was a Chapter 12 case. 903 F.2d at 695. However, *Camino Real*, which the *Fowler* court points to as the case that approved the formula approach, was a Chapter 11 case. *Camino Real*, 818 F.2d at 1504. Thus, considering which method to use de novo, this Court finds that applying the formula approach, standing alone, is not reversible error.

- 10 -

1 Nonetheless, Appellant argues that "blindly" applying the formula approach is error. Doc. 21 at 15. Appellant argues that there may be market methods that better reflect the value of the creditor's claim than the formula approach. *Id.* (quoting *In re SJF Ventures, LLC*, 441 B.R. 248, 254 (Bankr. N.D. Tex. 2010)). Thus, Appellant appears to argue that the Bankruptcy Court erred in applying the formula approach without acknowledging its option to apply an alternative approach. Doc. 21 at 16 (Appellant states, "Any fair reading of the Confirmation Opinion compels the conclusion that the bankruptcy court unwaveringly applied the [formula] approach to analyze the appropriate interest rate to be applied to [Appellant's] secured claim under the Plan.").

In ruling on Appellant's objection to using the formula or "*Till*"[3] approach, the Bankruptcy Court ruled as follows:

> Although *Till* was a chapter 13 case, the Court indicated that the relevant statutory language –"value, as of the effective date of the plan" – requires a court to discount a st[r]eam of deferred payments back to their present dollar value. 541 U.S. at 474 & n.10. And because this statutory language is identical in the present §§ 1325(a)(5)(B)(ii) and 1129(b)(2)(A)(i)(II), the Court held that "we think it likely that Congress intended bankruptcy judges and trustees to follow essentially the same approach when choosing an appropriate interest rate under any of these provisions." *Id.* The only possible difference the Court noted was that there might be an efficient market for financing loans to Chapter 11 debtors, and that if such a market were available it would be appropriate to consider what rate such an efficient market would dictate. *Id.* at 477 n.14. Here, however, all parties and experts agreed there is no market for a loan equivalent to the plan's treatment of Comerica's secured debt, so that possible exception to *Till*'s analysis in a chapter 11 case does not apply.

Doc. 22-2 at 12, n. 19.

Although on appeal Appellant argues that the Bankruptcy Court failed to consider and give sufficient weight to Appellant's expert's testimony, this Court finds that the Bankruptcy Court did consider that testimony as it related to the interest rate question. Further, the above quoted language from the Bankruptcy Court's Order makes clear that the Bankruptcy Court knew it could consider an alternative market approach. Considering the law applied by the Bankruptcy Court de novo, this Court finds that the Bankruptcy Court did not err in using

---

[3] *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004).

- 11 -

1 the formula or *Till* approach to calculate the interest rate.

2 Finally, Appellant argues that even if the formula/*Till* approach was appropriate, the
3 Bankruptcy Court misapplied it. Doc. 21 at 16-17. Citing *Till*, Appellant argues that under
4 the formula approach, the bankruptcy court must consider the characteristics of the loan.
5 Doc. 21 at 17 (citing *Till*, 547 U.S. at 479). Appellant further notes that *Till* does not
6 elaborate on what constitutes the characteristics of the loan. *Id*. at 16. Appellant then argues
7 that the Bankruptcy Court here erred by failing to consider the loan-to-collateral-value as a
8 characteristic of the loan. *Id.* at 16-17.

9 Considering that *Till* did not mandate what constitutes the characteristics of the loan,
10 and giving substantial deference to the Bankruptcy Court's determination of the interest rate,
11 this Court finds that the Bankruptcy Court did not err in failing to consider loan-to-collateral-
12 value as a characteristic of the loan. The Bankruptcy Court gave a detailed analysis of all the
13 facts it considered in applying the formula approach (Doc. 22-2 at 14-16) and this Court finds
14 that analysis correctly applied the *Till* considerations. Giving substantial deference to the
15 Bankruptcy Court's calculation, this Court will not reverse the Bankruptcy Court's
16 determination of the interest rate.

17 **IV.   Conclusion**

18 Based on the foregoing,

19 **IT IS ORDERED** that the motion to dismiss for mootness (Doc. 41) is granted as to
20 the new value contribution claim of error, and denied as to the § 1111(b) election and interest
21 rate claims of error.

22 **IT IS FURTHER ORDERED** that the motion to dismiss for lack of jurisdiction as
23 to the § 1111(b) election claim of error (Doc. 23) is granted.

24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

- 12 -

**IT IS FINALLY ORDERED** that the decision of the Bankruptcy Court on the calculation of the interest rate is affirmed. Pursuant to Federal Rule of Bankruptcy Procedure 8016(a), the Clerk of the Court shall enter a judgment consistent with this Order. The Court reads 28 U.S.C. § 158(d) as requiring only a judgment, and not a mandate, from this Court. However, if either party disagrees, that party may move for issuance of a mandate within 21 days.

DATED this 29th day of March, 2012.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge